IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANTHONY D. SCOTT,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

CASE NO. 2:16-CV-466
CRIM. NO. 2:13-CR-223
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth A. Preston Deavers

## REPORT AND RECOMMENDATION

Petitioner has filed a *Motion to Vacate under 28 U.S.C. § 2255.* (ECF No. 64.) This matter is before the Court on the instant motion and *Memorandum of Law in Support* (ECF No. 72), Respondent's *Response in Opposition* (ECF No. 75), Petitioner's *Reply* and *Notice of Santillana v. Upton* (ECF Nos. 76, 77), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the *Motion to Vacate under 28 U.S.C. § 2255* (ECF No. 64) be **DISMISSED**.

### Facts and Procedural History

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of the case as follows:

> In October 2013, Scott was charged with four counts of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Counts 1 through 4), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 5), and a forfeiture count, requiring Scott to forfeit five firearms in the event of his conviction. In February 2014, after an initial plea agreement was entered and then abrogated by the replacement of Scott's counsel, Scott signed the same plea agreement, agreeing to plead guilty to Count 4; he also acknowledged his liability for the firearm forfeiture. The agreement provided that, in exchange for Scott's plea, the government would dismiss the remaining charges and

would not seek to enhance Scott's sentence pursuant to 21 U.S.C. § 851(a)(1). For sentencing purposes, the parties agreed that: Scott's base offense level would be 38 because the death of Robert Ruffing resulted from the use of heroin that Scott distributed; he would receive a two-level enhancement for his possession of a firearm in furtherance of his commission of Count 4; and the government would recommend a three-level reduction for acceptance of responsibility. At Scott's plea hearing, counsel admitted the accuracy of the government's statement of facts, but noted that Scott personally disputed that Ruffing died as the result of the heroin that Scott sold to him. Following the colloquy, the district court accepted Scott's plea.

A presentence report calculated Scott's total offense level as 37 and his criminal history category as III, resulting in a guidelines range of imprisonment of 262 to 327 months. The applicable guidelines range became 240 months, however, because it was the maximum term of imprisonment for the offense. *See* USSG § 5G1.1(a). Scott filed a motion for a downward departure, suggesting a 156-month sentence. At Scott's sentencing hearing, the district court granted a motion filed by the government to reduce Scott's offense level consistent with the anticipated drug sentence reductions promulgated by the Sentencing Commission, revising Scott's guidelines range to 210 to 262 months of imprisonment. The district court denied Scott's motion for a downward departure and imposed a 240-month term of imprisonment, to be followed by six years of supervised release.

(ECF No. 58.) Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967). On March 2, 2017, the Sixth Circuit affirmed the judgment of this Court. (ECF No. 58.) On May 18, 2015, the United States Supreme Court denied the petition for a writ of *certiorari*. (ECF No. 61.)

On May 25, 2016, Petitioner filed the instant *Motion to Vacate under 28 U.S.C. § 2255*. Petitioner asserts that his recommended sentence under the advisory United States Sentencing Guidelines was incorrectly calculated, based on an intervening change in the law, i.e., the Supreme Court's decision in *Molina-Martinez v. United States*, -- U.S. --, 136 S.Ct. 1338 (2016) (claim one); and that he was denied the effective assistance of counsel, because his attorney told

him that his recommended sentence would not be enhanced based on the death of Robert Ruffing if he entered a guilty plea (claim two). It is the position of the Respondent that Petitioner's claims fail to provide a basis for relief.

## Standard of Review

To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,' " *Davis v. United States,* 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). A petitioner under § 2255 waives any non-constitutional claims he failed to raise at trial or on direct appeal except where the errors amount to something akin to a denial of due process. Mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

It is well-established that a § 2255 motion "is not a substitute for a direct appeal." *Ray v. United States,* 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). Accordingly, claims that could have been raised on direct appeal, but were not, will not be

entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime. *Ray,* 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted).

## Claim One

Petitioner asserts that he has been improperly sentenced under the advisory United States Sentencing Guidelines, because his base offense level was enhanced pursuant to U.S.S.G. § 2D1.1(a)(2) based on the death of Robert Ruffing, resulting in a total offense level of 38. *See PreSentence Investigation Report*, § 32.

The United States Court of Appeals for the Sixth Circuit has already affirmed Petitioner's sentence, and in so doing, held that Petitioner had waived his claim that his sentence had been improperly enhanced as a result of Ruffing's death under the terms of his negotiated *Plea Agreement*:

> Scott [] stated that he understood, by pleading guilty, he was waiving all of the rights associated with a jury trial. The government then summarized the parties' plea agreement. . . [T]he parties agreed to a base offense level of 38 due to the fact that the death of an individual resulted from the use of heroin that Scott distributed; Scott would receive a two-level enhancement for possessing a weapon in furtherance of his drug trafficking crime; and the government would recommend a three-level decrease for Scott's timely acceptance of responsibility. Scott confirmed that he understood the agreement and that there were no additional promises made that were not contained in the agreement. . . . Scott reaffirmed that current counsel had explained the offense level, and that Scott both understood it and agreed to it. Scott finally stated that it was his "free and voluntary act" to plead guilty because he was in fact guilty of the offense.
>
> . . . Scott admitted that he sold heroin and that the drugs found in the residence were his; Scott sold heroin to Robert Ruffing on August 4 and, the next day, Ruffing was found deceased; after an autopsy, Ruffing's death was determined to have been caused by a

4

heroin overdose; Scott was among the last individuals that Ruffing called before his death; and Scott admitted, in recorded phone calls with a confidential informant, that a man to whom he had previously sold heroin had died after overdosing on heroin Scott had provided to him. Scott noted that he did not dispute the government's evidence and acknowledged what he said on the recorded telephone conversations; nevertheless, Scott personally did not agree to the fact that Ruffing died as the result of an overdose of heroin that he provided.

\*\*\*

[No] arguable issue [can] be raised on appeal in connection with the imposition of the 240-month term of imprisonment. . . .

Scott can raise no arguable issue on appeal concerning the procedural reasonableness of his sentence. At Scott's sentencing hearing, Scott noted that he had no objections to the presentence report. The district court summarized the calculation of the guidelines range in the presentence report and the sentencing memoranda filed by the parties. As stated above, the district court noted Scott's revised guidelines sentencing range of 210 to 262 months and considered letters and testimony from Scott's family and from Scott himself. After consideration, the district court concluded that a sentence of 240 months was appropriate. These facts do not demonstrate a non-frivolous issue in connection with the procedural reasonableness of his sentence, as the district court not only properly calculated Scott's guidelines range, but it also considered the 18 U.S.C. § 3553(a) sentencing factors and the arguments of the parties, and explained the chosen sentence of 240 months.

Likewise, Scott cannot raise an arguable issue to rebut the presumptive substantive reasonableness of his sentence. *Vonner*, 516 F.3d at 389. Prior to imposing sentence, the district court noted that the circumstances of Scott's offense were "horrible" in that someone died from the heroin he was selling. Although the court acknowledged that Ruffing was a participant in his own death, it further acknowledged that Congress intended severe penalties for the distributors of drugs when death results. Likewise, although Scott urged the court to consider his family when imposing his sentence, the court stated that it also had to consider Ruffing's family. The district court noted that Scott had four prior convictions for drug-related offenses and the current offense was committed while he was on probation for another drug offense. The district court stated that a serious sentence was

> necessary both to promote respect for the law and to afford adequate deterrence to others. Considering the guidelines range of 210 to 262 months and the benefit that Scott received from his plea agreement, the court imposed a sentence of 240 months. The record therefore does not reflect that the district court selected the 240-month sentence arbitrarily, failed to consider pertinent sentencing factors, or gave an unreasonable amount of weight to any factor. As a result, Scott can raise no arguable issue on appeal to rebut the presumption that his within-guidelines sentence was substantively unreasonable.
>
> With respect to Scott's pro se brief, all of the claims he raises regarding the sentencing enhancement as a result of Ruffing's death are precluded by Scott's plea agreement. Despite Scott's statements at his plea hearing that he did not agree that he was responsible for Ruffing's death, he admitted the accuracy of the government's evidence, including his own statements in telephone conversations soon after Ruffing's death that a man died as the result of heroin that Scott sold to him. Further, in his plea agreement – which the record establishes was entered into knowingly and voluntarily. . . Scott stipulated that his base offense level would be 38 on the basis that Ruffing's death resulted from his distribution of heroin. Accordingly, he cannot raise an arguable issue on appeal that the enhancement was improperly applied. . . . Scott agreed to the enhancement in his plea agreement[.]
>
> . . . At his plea hearing. . . he stated that he understood that he would not be able to withdraw his plea if he was displeased with the presentence report, the recommended sentence, or the sentence imposed.

(Doc. 58, PageID# 198-201.)

Thus, the Sixth Circuit held that Petitioner had waived his claim that his sentence was improperly enhanced based on Ruffing's death, pursuant to the terms of his negotiated *Plea Agreement*. This Court therefore will not now again address that same issue here. "A § 2255 motion may not be used to relitigate an issue that was raised on [direct] appeal absent highly exceptional circumstances." *Dupont v. United States*, 76 F.3d 108, 110–111 (6th Cir. 1996) (citing *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995); s*ee Jones v. United States*, 178

F.3d 790, 796 (6th Cir. 1999) ("It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.").

Petitioner argues that the Supreme Court's recent decision in *Molina-Martinez*, 136 S.Ct. at 1338, constitutes an intervening change in law that nonetheless permits this Court's review of the issue in these proceedings. *See Reply* (ECF No. 76.) This Court is not so persuaded. The Supreme Court in *Molina-Martinez* held that "defendants faced with an improperly calculated Guidelines range but sentenced to a term of incarceration falling within the corrected Guideline range are not required to provide some 'additional evidence' that an error in calculation affected his or her sentence." *Rogers v. United States*, No. 2:11-CR-81-JRG-MCLC-2, 2:16-cv-135-JRG, 2017 WL 1422010, at *2 n.2 (E.D. Tenn. April 20, 2017) (citing *Molina-Martinez*, 136 S.Ct. at 1345-49). The Supreme Court stated, "[w]hen a defendant is sentenced under an incorrect Guidelines range – whether or not the defendant's ultimate sentence falls within the correct range – the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Id.* at 1345. The holding in *Molina-Martinez* therefore does not assist Petitioner. Nothing in *Molina-Martinez* warrants this Court's reconsideration of the Sixth Circuit's conclusion that Petitioner waived his claim regarding the enhancement of his sentence under the advisory sentencing guidelines based on Ruffing's death. As previously discussed, Petitioner explicitly agreed to the enhancement of his sentence on this basis pursuant to the terms of his *Plea Agreement*, and the Court of Appeals has determined that Petitioner entered a knowingly, intelligent, and voluntary guilty plea.

Petitioner also refers to *Santillana v. Upton*, 846 F.3d 779 (5th Cir. 2017). *Notice* (ECF No. 77.) In *Santillana v. Upton*, the United States Court of Appeals for the Fifth Circuit held that

the Supreme Court's decision in *Burrage v. United States*, -- U.S. --, 134 S.Ct. 881 (2014), applied retroactively to cases on collateral review, reversing the District Court's dismissal of a habeas corpus petition based on the contrary conclusion, and remanding the case for further proceedings.

> In *Burrage*, the Supreme Court imposed a new and stricter burden of proof that the government needs to prove in order to establish that death or serious bodily injury "resulted" from drug distribution under 21 U.S.C. § 841(b)(1)(C). Under *Burrage*, the government must meet a "but for" causation test, *i.e.*, that "but for" the drug which a defendant distributed, the overdose victim would not have died or been seriously injured. *Burrage* 134 S. Ct. at 887-92. In so ruling, the Supreme Court rejected a prior appellate court decision finding it sufficient for the government to prove merely that the drug which a defendant distributed "contributed" to an overdose victim's injury or death. *Id.*

*United States v. Noble*, No. 1:14-cr-135, 2017 WL 626139, at *5 (N.D. Ohio Feb. 15, 2017).

In any event, *Burrage* does not assist Petitioner. As discussed, Petitioner waived this issue pursuant to the terms of his negotiated *Plea Agreement*. Notably, by entry of his guilty plea, the government did not seek the statutory enhancement provided for under § 841(b)(1)(C) based on the death or serious bodily injury of an individual from the drugs at issue.[1] See Plea

---

[1] 21 U.S.C. § 841(b)(1)(C) provides:

In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid (including when scheduled as an approved drug product for purposes of section 3(a)(1)(B) of the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000), or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $2,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of

Agreement (ECF No. 19, PageID# 36.) The record reflects that Petitioner knowingly, intelligently, and voluntarily entered his guilty plea and repeatedly indicated that he understood and agreed to the enhancement of his sentence under the advisory sentencing guidelines based upon Ruffing's death. He therefore is precluded from now arguing otherwise in these proceedings.

Additionally, the record indicates that the government would have been able to establish that the heroin Petitioner sold caused Ruffing's death. The prosecutor's summary of the statement of facts indicates that, on August 4, 2013, Petitioner distributed heroin to Robert Ruffing,

> who was then found deceased on August 5, 2013. An autopsy was subsequently conducted on Ruffing, and it was confirmed that the cause of his death was a heroin overdose.
>
> After Ruffing's death, additional witnesses confirmed that Ruffing was a heroin customer of Scott's, and one government source of information confirmed that Scott had admitted he had sold heroin to Ruffing on August 4th.
>
> A review of cell phone call records also established that Scott was among the last persons Ruffing called on August 4th.
>
> On August 15th and August 22nd, investigators had a CI place recorded phone calls to Scott in which Scott admitted that a male he had previously provided heroin to had died after overdosing on the heroin Scott provided.

*Guilty Plea Transcript* (ECF No. 56, PageID# 152.) Petitioner agreed with these facts. Although he did dispute whether he had provided Ruffing with the heroin that caused Ruffing's death, Petitioner acknowledged that he had made recorded statements of an incriminating nature

---

supervised release of at least 6 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced be eligible for parole during the term of such a sentence.

to others in this regard, indicated that a separate witness would have provided additional testimony about other statements he had made, and that cell phone records also tied him to Ruffing's death. (PageID# 152-53.) The *PreSentence Investigation Report* also indicates:

> [I]nvestigation revealed on August 4, 2013, Anthony D. Scott distributed heroin to Robert Ruffing. Ruffing was subsequently found deceased on August 5, 2013. An autopsy was conducted and confirmed the cause of death was a heroin overdose. After Ruffing's death, additional witnesses confirmed Ruffing was a heroin customer of Scott and one government source of information confirmed Scott admitted he had sold heroing to Ruffing on August 4, 2013. A review of cellular telephone records also established Scott was among one of the last people Ruffing telephoned on August 4, 2013. On August 15 and 22, 2013, investigators had a CI place recorded telephone calls to Scott, in which the defendant admitted the male he recently provided heroin to had died after overdosing on the heroin he had provided him.

*PreSentence Investigation Report*, ¶ 17.

> Anthony Scott stated Ruffing had been a past customer. Although Scott stated he feels bad Ruffing died from a heroin overdose. . . Scott stated he was simply bragging the heroin he sold had not been weakened through the use of "cutting." The heroin he distributed was of a high content and he was simply attempting to "brag and boast" about his product. Anthony Scott indicated he is unsure if he provided a fatal amount of heroin that subsequently led to Robert Ruffing's death.

*Id*. at ¶ 27.

Petitioner has failed to establish that he is entitled to relief based upon improper calculation of his sentencing guidelines.

### Claim Two

Petitioner asserts that he was denied the effective assistance of counsel. Petitioner claims that his attorney incorrectly advised him that, if he pleaded guilty, his recommended sentence would not be increased based on Ruffing's death. However, Petitioner acknowledges that the express terms of his *Plea Agreement* indicate otherwise:

10

> Pursuant to U.S.S.G. 2D1.1(a)(2) because the defendant will be convicted under 21 U.S.C. 841(b)(1)(C) and the offense of conviction establishes that the death of an individual resulted from the use of the heroin that was distributed, the defendant's base offense level is 38[.]

*Plea Agreement* (ECF No. 34, PageID# 65.) Petitioner nonetheless maintains that defense counsel promised him, in an off-the-record conversation outside of the Court's presence, that if he pleaded guilty, his sentence would not be enhanced as a result of Ruffing's death. Petitioner requests an evidentiary hearing on this claim. *See* Petitioner's *Reply* (ECF No. 76.)

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. In order to establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings

would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome*."* *Id*. Because a petitioner must satisfy both prongs of *Strickland* in order to demonstrate the ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

A defendant may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). *Strickland's* two part test of deficient performance and prejudice also applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to establish prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 58-59. Petitioner cannot meet this standard here.

Petitioner's allegation now that his attorney advised him in an off-the-record conversation that his sentence would not be increased based on Ruffing's death is simply not worthy of credit in view of the record before this Court. As already discussed, Petitioner signed a *Plea Agreement* whereby he agreed that his total base offense level under the recommended United States Sentencing Guidelines would be 38 because the offense of conviction established that the death of an individual resulted from the use of the heroin that he distributed. *Plea Agreement* (ECF No. 34, PageID# 65.) At the time of his guilty plea, Petitioner stated that his attorney had fully advised him on the nature and meaning of the charge and any defenses he may have. *Guilty Plea Transcript* (ECF No. 56, PageID# 132.) Petitioner was satisfied with counsel's representation. (PageID# 132-33.) He understood he faced up to twenty years in

12

prison and that the Court could impose the maximum term. (PageID# 134, 135.) He had discussed with his attorney how the advisory sentencing guidelines might apply in his case. (PageID# 139.) He understood that the Court could not determine the advisory guideline sentence for his case until after preparation of the presence report and that the Court would not be bound by any stipulation of facts between Petitioner and the government, but would make the determination of relevant facts for sentencing. (PageID# 139.) He understood that the Court had the authority to impose a sentence that was more or less severe than provided for by the advisory sentencing guidelines. (PageID# 139.) He understood that if the Court imposed a sentence more severe than he expected he would still be bound by his guilty plea and would not have the right to withdraw the guilty plea. (PageID# 140.) The prosecutor summarized the terms of the plea agreement, including that Petitioner faced up to twenty years imprisonment. In exchange for Petitioner's guilty plea, the government agreed not to file an Information pursuant to 21 U.S.C. § 851 seeking to increase the maximum sentence for Petitioner's conviction. (PageID# 143.) The government also agreed to dismiss the remaining counts of the Indictment and not to file additional criminal charges against Petitioner based on the activities charged in the Indictment or occurring prior to the time of the Indictment. (PageID# 144-45.) The government agreed that Petitioner had timely accepted responsibility and would be entitled to a three-level reduction in his offense level. The parties also agreed that, because the offense of conviction established that the death of an individual resulted from the use of the heroin that was distributed, Petitioner had a base offense level of 38. (PageID# 146.) Petitioner acknowledged that the Court had not yet determined a sentence, and therefore, any estimate of the probable sentencing range he may have received either from his attorney, the United States, or the probation office was simply a prediction, and not a promise. (PageID# 146.) The United States expressly made no promise

concerning the sentence that would be imposed, and Petitioner acknowledged that he could not withdraw his guilty plea based on the actual sentence he received. (PageID# 147.) Petitioner agreed with those terms. (PageID# 147.) He expressly denied being made any other promises or being given any assurances of any kind from anyone that had induced his guilty plea. (PageID# 148.) He understood that any recommendation of a sentence to which his attorney and the government, or any agreement by the government not to oppose a sentence requested by his attorney, would not be binding on the Court. He indicated that he understood that he might receive a more severe sentence than requested or recommended. (PageID# 148.) He would still be bound by his plea of guilty and would have no right to withdraw the guilty plea. (*Id.*)

> COURT: Sometimes – not often, but sometimes after the presentence report has been completed and you read it and you see what the recommendation is from the probation officer, some defendants contact their counsel and say, Uh, I don't like this; I don't like the way it's going; I want to withdraw my guilty plea.
>
> Do you understand it's too late then?
>
> SCOTT: Yeah.
>
> Q. Today is the day. You either make up your mind to go forward or not. Do you understand that?
>
> A. Yes, sir.
>
> Q. Are you going forward today?
>
> A. Yes, sir.
>
> \*\*\*
>
> Now Mr. Scott, aside from the plea agreement which we've just discussed, has any person, including any officer or agent of the government or any of the attorneys in this case, promised or even suggested that you will receive a lighter sentence or any other form of leniency if you plead guilty here today?
>
> A. No, sir.

<mark>14</mark>

*Guilty Plea Transcript* (ECF No. 56, PageID# 149-150.) In view of this record, Petitioner's allegations that his attorney made him an off-the-record promise that his sentence would not be enhanced based on Ruffing's death is simply not worthy of credit.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea proceeding], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–75 (1977). Petitioner has failed to establish the denial of the effective assistance of counsel.

Claim two is without merit.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

    s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge