

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANTHONY D. SCOTT,

  Petitioner,

vs.

UNITED STATES OF AMERICA,

  Respondent.

Cr. Case No: 2-13-CR-223
Civil Case No: 2:16-CV-466

### COMBINED MOTION AND BRIEF FOR RELIEF FROM A JUDGMENT OR ORDER PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE 60(b) AND REQUEST FOR AN EVIDENTIARY HEARING.

COMES NOW, Anthony D. Scott, hereafter "Petitioner," and MOVES this Court to GRANT appropriate relief in accord with the **Federal Rules of Civil Procedure Rule 60(b)(6).** Petitioner challenges the fundamental defect in the previous habeas proceeding, i.e.: a failure to properly construe his pro se pleading in accord with **Erickson v. Pardus,** 551 U.S. 89, 93 (2007).

### Preliminary Hearing

Primarily, Petitioner attempted to challenge the Government's failure to prove that Robert Ruffin's death was due to him allegedly providing the herion that contributed to Mr. Ruffin's death. However, Petitioner's argument was reframed as an error by his filing of a judicial notice and trying to add a new claim under the Confrontation Clause as the Court noted that the Petitioner waived his right to challenge the enhancement of his recommended guideline sentence under the "explicit terms of his negotiated Plea Agreement."

Specifically, Petitioner's argument arises under the Supreme Court's reasoning in Burrage v. United States, 571 U.S. 204 (2014). Due to his attorney's failure to explain the Burrage logic to him, his plea was entered into in an unknowing and unintelligent manner in violation of Brady v. United States, 397 U.S. 742 (1970). While the major precept of this Motion resolves around the inequity of the habeas proceedings, Petitioner will make his argument for purposes demonstrating the deficient performance rendered during the plea negotiation and acceptance stages of the proceeding.

ARGUMENT ONE: PETITIONER'S PLEA WAS NOT ENTERED INTO ON A KNOWING OR INTELLIGENT BASIS IN VIOLATION OF BRADY V. UNITED STATES, 397 U.S. 742 (1970) WHERE COUNSEL FAILED TO EXPLAIN OR APPLY BURRAGE V. UNITED STATES, 571 U.S. 204 (2014).

"[A] document filed pro se is to be liberally construed, and a pro se [pleading] however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 93 (2007). Petitioner's pleading must be construed to raise the strongest argument where as in this case revolves around deficient performance for counsel's failure to explain and apply Burrage v. United States, 571 U.S. 204 (2014).

Specifically, Counsel's failure to utilize Burrage has resulted in a Glover violation as "[a]ny additional amount of jail-time has Sixth Amendment significance." See Glover v. United States, 531 U.S. 198, 203 (2001); cf: Strickland v. Washington, 466 U.S. 668 (1984). Further, Counsel's failure to explain Burrage or utilize such in defense of the Government's allegations that Petitioner's distribution of heroin resulted in Robert Ruffin's death.

While Mr. Ruffin's death is a tragic event, blaming this Petitioner for such does address Mr. Ruffin's propensity to ingest narcotics intravenously. The Government must meet a "but for" causation test, i.e., "but for" the drug which a defendant distributed, the overdose victim would not have died or been seriously injured. The ruling in Burrage demonstrates the Supreme Court's rejection of a prior appellate court de-

cision finding it sufficient for the government to prove merely that the drug which a defendant distributed "contributed" to an overdose victim's injury or death. See **United States v. Noble**, 1:14-cr-135, 2017 U.S. Dist. LEXIS 21444, 2017 (N.D. Ohio Feb. 15, 2017).

The logic of Burrage provides substantial guidance in dileneating that the Controlled Substance Act does not define the phrase "results from." Logically, the plain meaning of "results from" would hinge upon a cause and effect based upon an action, process, or design. As a matter of law, this standard requires proof that Mr. Ruffin's death would not have occurred absent specific actions of this Petitioner.

In a case where death results enhancement in 21 U.S.C. § 841(b) is applied, this is an element that must be submitted to a jury and found beyond a reasonable doubt or admitted by the defendant. Here, the Petitioner has never admitted that heroin that he distributed caused Mr. Ruffin's death. Notably, Petitioner denied such during the process of plea colloquy.

At bar, the Government cannot prove that Mr. Ruffin died because of this Petitioner's actions. The Franklin County Coronoer's report (LAB-13-1997), attached as Exhibit "A", demonstrates Mr. Ruffin's urine tested positive for Morphine, Oxyepam, Oxycodone, Oxymorphone, and Codeine, amongst other substances. Most remarkanly line 1 of the Findings and Dignoses indicates Morphine (an alkaloid; chemical formula $C_{17} H_{19} NO_3$) and its derivative 6-monoacetyl morphine was present in the toxicology along with Codeine (an alkeloid; chemical formula $C_{18} H_{22} NO_3$ although the cause of death was determined to be acute intoxication by heroin (a diacetylmorphine; chemical formal $C_{17} H_{17} NO (C_2H_3O_2)2$).

While the chemical formula's found to be present in Mr. Ruffin's blood and urine indicate a broad based drug usage, the report does not indicate that heroin was found in the blood or urine! In fact, of the narcotics found in Mr. Ruffin's system, none was found to be in amount rated above T (theraputic) giving rise to any X (toxic) or XL (toxic to lethal) amounts. At bar, ther is not one scintilla of evi-

dence that Petitioner's actions gave rise to "but-for causality." Clearly, Counsel was deficient for failing to recognize that heroin was not present in Mr. Ruffin's system where the prejudice is obvious; a dramatically increased prison sentence.

Accordingly, Petitioner's plea could not be knowing or intelligent because he has admitted that:

> "(2) The parties agree that pursuant to U.S.S.G. § 2D1.1(a)(2) because the defendant will be convicted under 21 U.S.C. § 841(b)(c) and the offense of conviction establishes that the death of an individual resulted from the use of the heroin that was distributed, the defendant's base offense level is 38."

Subsequently, how is it that Petitioner has admitted to "contributing" to Mr. Ruffin's death by way way of herion, when heroin is not even listed on the coronor's report? Further, how could Counsel advise this Petitioner to plead guilty when the chemical formulas for the drugs in Mr. Ruffin's system does not match heroin?

Plainly stated, Petitioner has pled guilty to facts that do not incriminate him or reach the elements necessary to trigger additional punishment in accord with 21 U.S.C. § 841(b)(1)(C). The record is wholly devoid of any evidence that Mr. Ruffin "would have lived but for his heroin use." Any fact that increases the mandatory minimum or maximum punishment must be admitted by the defendant. See Alleyne v. United States, 133 S. Ct. 2151, 186 L. Ed. 2d (2013) and Appendi v. New Jersey, 530 U.S. 466 (2000). At no time relevant has this Petitioner admitted to such facts as such constitute a legal impossibility.

As this Petitioner's plea was not entered into a knowing or intelligent basis, respectfully, this Court should vacate its previous judgment rendered in the habeas process and remand the matter for an evidentiary hearing. Good cause exists to take this favorable action due to the absence of heroin being identified in Mr. Ruffin's blood or urine where the chemical formulations do not match heroin.

-5-

An evidentiary hearing is within the interest of justice in this matter due to complexities associated with deciphering the chemical compounds at bar. As such, the Court should also appoint counsel to further investigate the absence of heroin in Mr. Ruffin's toxicology report.

Accordingly, Petitioner challenges the District Court's failure to make a merits ruling on the arguments contained in the original § 2255 and clarified within this Rule 60(b) motion as a "defect in the integrity of federal habeas proceedings." See Gonzalez v. Crosby, 545 U.S. 524 (2005). A failure to decide Petitioner's core issue on the merits will result in both an illegal sentence an inherent miscarriage of justice.

As any adverse decision in this case has a potential impact upon horizontal stare decisis, Petititioner asks this Court, in the event of an adverse decision, to certify the following question for the Sixth Circuit Court of Appeals:

> "Can an appeal waiver be deemed a knowing and intelligent act if the defendant --- reliant upon advice of counsel --- has not been properly advised of current Supreme Court authority, where failure to properly advise the defendant results in a dramatically enhanced Guideline calculation?"

<u>CONCLUSION</u>

For the reasons demonstrated herein, Petitioner PRAYS that this Court GRANT appropriate relief consistent with principles of equity.

Dated this the 27 day of January, 2019.

Respectfully Submitted,

*Anthony Scott*
Anthony D. Scott, Petitioner
Registration No: 71608-061
Federal Correctional Institution - Elkton
P.O. Box 10
Lisbon, Ohio 44432

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY D. SCOTT, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | Cr. Case No: 2-13-CR-223 |
| | § | Civil Case No: 2:16-CV-466 |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

COMBINED MOTION AND BRIEF FOR RELIEF FROM A JUDGMENT OR ORDER PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE 60(b) AND REQUEST FOR AN EVIDENTIARY HEARING.

Certificate of Service

On this the 27 day of January, 2019, I did place a true and accurate copy of this Combined Motion and Brief for Relief from a Judgment or Order Pursuant to the Federal Rules of Civil Procedure 60(b) and Request for an Evidentiary Hearing in the United States Mail, postage pre-paid for delivery to the Clerk of Court pursuant to Houston v. Lack, 487 U.S. 266 (1988).

Respectfully Submitted,

*Anthony Scott*
Anthony D. Scott, Petitioner
Registration No: 71608-061
Federal Correctional Institution - Elkton
P.O. Box 10
Lisbon, Ohio 44432

EXHIBIT "A"

FRANKLIN COUNTY CORONER LAB REPORT (LAB-13-1997)



# Franklin County Coroner's Office

Dr. Jan M. Gorniak
520 King Ave.
Columbus, Ohio 43201-2632
(614) 525-5290 Fax (614) 421-7307
www.coroner.franklincountyohio.gov

## Toxicology Report
Division of Toxicology
Calvin McGuire, Chief Toxicologist

Robert L. Ruffing

Case #   LAB-13-1997

Date report completed: September 3, 2013

A comprehensive analysis has been performed and the following agents were detected.

**Postmortem Blood:**

Gray Top Femoral

| Agent | Result | |
|---|---|---|
| Ethanol | Not Detected | |
| Nicotine | Positive | |
| Cotinine (nicotine metabolite) | Positive | |
| Caffeine | Positive | |
| Diazepam | 54 ng/mL | T |
| Nordiazepam | 261 ng/mL | T |
| Oxazepam | Trace | S |
| Temazepam | Not Detected | |
| Alprazolam | 12 ng/mL | T |
| Alpha-Hydroxy-Alprazolam | Not Detected | |
| Oxycodone | Trace | S |
| Oxymorphone | Not Detected | |
| Morphine | 557 ng/mL | |
| 6-Monoacetylmorphine | 19 ng/mL | |
| Codeine | 20 ng/mL | |

Page 1 of 3

Robert L. Ruffing                                          Case #   LAB-13-1997

| | |
|---|---|
| Acetaminophen | Not Detected |
| **Vitreous:** | |
| Vitreous | |
| Sodium | 143 mmol/L |
| Potassium | 16 mmol/L |
| Chloride | 130 mmol/L |
| Calcium | 1.6 mmol/L |
| Magnesium | 0.78 mmol/L |
| Glucose | 32 mg/dL |
| Lactate | 15 mmol/L |
| Urea Nitrogen | 10 mg/dL |
| Creatinine | 1.0 mg/dL |
| **Postmortem Urine:** | |
| Urine | |
| Nicotine | Positive |
| Cotinine (nicotine metabolite) | Positive |
| Caffeine | Positive |
| Oxazepam | Positive |
| Oxycodone | Positive |
| Oxymorphone | Positive |
| Buprenorphine | Not Detected |
| Ibuprofen | Positive |
| Acetaminophen | Positive |



# Franklin County Coroner's Office

Dr. Jan M. Gorniak
520 King Ave.
Columbus, Ohio 43201-2632
(614) 525-5290 Fax (614) 525-6002
www.franklincountyohiocoroner.com

## Autopsy Report

| | |
|---|---|
| **Case Number:** | LAB-13-1997 |
| **Name, gender, age:** | Robert L. Ruffing, Male, 41 years |
| **Date and time pronounced:** | August 5, 2013 @ 1131 hours |
| **Date and time of autopsy:** | August 6, 2013 @ 1040 hours |
| **Examination performed by:** | John A Daniels M.D., Forensic Pathologist |

## FINDINGS AND DIAGNOSES

1. Toxicology, postmortem blood: Morphine, 6-monoacetylmorphine and codeine are present.
2. Non-therapeutic venipuncture of the left antecubital fossa
3. Pulmonary edema
4. Early changes of decomposition

**Cause of death:** Acute intoxication by heroin

**Manner of death:** Accident

## POSTMORTEM EXAMINATION

A complete postmortem examination was conducted on at August 6, 2013 at 1040 hours, at the Franklin County Coroner's Office.

IDENTIFICATION: The decedent has been positively visually identified by Detective Fulton of the Columbus Police Department to be "Robert L. Ruffing", a 41 year old white male.

EXTERNAL EXAMINATION: The decedent is received in a white body bag. The decedent has a Franklin County Coroner's Office identification tag on the right ankle labeled "body of Robert L. Ruffing". The decedent is a well-developed, well-nourished adult white male, appearing the stated age of 41 years. The body length is 73 inches; the weight is 187.5 pounds. Rigor mortis is absent in the jaw and extremities. Livor mortis is posteriorly dependent, red and fixed. At the time of examination, the body is cool to the touch. Head hair is dark brown, of medium length and normally distributed. Facial hair is absent. Body hair is average in amount for the apparent age, race and sex.

The head is normocephalic. The eyes are equal in size and are normal position and configuration. The conjunctivae are smooth, moist, glistening and unremarkable. The irides are brown. The corneae are clear. The pupils measure 0.5 centimeters in diameter bilaterally.

The ears are equal in size and are of normal position and configuration. The external auditory canals are patent. The nose has normal location, size and configuration. The nasal passages are patent. The mouth and oral cavity show no evidence of abnormality or recent or remote injury. Natural teeth are present and in good condition.

The neck is straight, mobile without crepitance or hypermobility. The trachea is in the midline. There are no palpable masses and no lymphadenopathy. The chest is symmetrical. The breasts are those of a normal adult male. The abdomen is flat and without abnormality. The back is symmetrical and has a normal configuration. The buttocks are symmetrical. The upper and lower extremities are symmetrical and have normal configuration. The hands and the feet are symmetrical and have normal configuration. The soles of the feet are without injury or deformity. The external genitalia are those of a normal circumcised adult male. The perineum shows no evidence of recent or remote injury or deformity.

EVIDENCE OF INJURY: There is a red, punctate, non-therapeutic venipuncture site in the left antecubital fossa. It is surrounded by a firm, 1/4 inch diameter subcutaneous swelling.

EVIDENCE OF MEDICAL INTERVENTION: There is no evidence of recent or remote medical intervention.

INTERNAL EXAMINATION: The thoracoabdominal cavities are opened with the usual "Y"-shaped incision. The subcutaneous tissues and musculature are unremarkable. The panniculus measures 1 inch in thickness at the level of the umbilicus.

SEROSAL CAVITIES: All are lined by smooth, glistening serosal membranes. None contain excess fluid.

ORGANS OF THE NECK: The neck organs have normal anatomic distribution. There are no hemorrhages in the musculature or soft tissues of the neck. The hyoid bone and the thyroid cartilage are intact. The thyroid gland is of usual size and configuration. The larynx is patent.

CARDIOVASCULAR SYSTEM: The heart weighs 416 grams and has a normal configuration. The epicardial surface is smooth and glistening. The coronary arteries are normally distributed and are not involved with atherosclerotic plaque. The myocardium is serially sectioned from apex to base. The myocardium is red-brown, glistening and has no focal abnormalities. The left ventricular wall measures 1.4 centimeters in thickness. The interventricular septum measures 1.3 centimeters in thickness. The right ventricular wall measures 0.4 centimeters in thickness. The heart valves have normal configuration and have thin, pliable leaflets. The heart valve measurements are: tricuspid valve 12.0 centimeters, pulmonary valve 6.8 centimeters, mitral valve 10.0 centimeters and aortic valve 7.5 centimeters. The endocardial surface is glistening and unremarkable. The aorta is lined by a pale brown, smooth glistening intima along its length. The major branches of the aorta are normally distributed and their ostia are patent.

RESPIRATORY SYSTEM: The right lung weighs 920 grams and the left weighs 982 grams. Both have dark red to brown, smooth, glistening pleural surfaces. Upon sectioning, both are dark red-brown, markedly congested, noncrepitant and have 1 to 2+ edema on all lobes. Sectioning reveals no areas of consolidation or mass lesions. The airways are lined by intact mucus membranes and are patent. No thromboemboli are present.

GASTROINTESTINAL SYSTEM: The gastrointestinal tract is examined from the pharynx to the anus and shows no evidence of recent or remote injury or pre-existing natural disease. The stomach contains approximately 100 milliliters of red-brown fluid. The vermiform appendix is present.

HEPATOBILIARY SYSTEM: The liver weighs 2200 grams. It has a red-brown, glistening, smooth, intact capsule. Upon sectioning, it is red-brown and has a normal consistency. The gallbladder and bile ducts are unremarkable and patent. The gallbladder contains approximately 10 milliliters of dark green bile.

SPLEEN: The spleen weighs 235 grams. It has an intact, red-blue capsule. Upon sectioning, it is dark red and congested.

GENITOURINARY SYSTEM: The right kidney weighs 242 grams and the left weighs 244 grams. Both have

Autopsy   LAB-13-1997                          Robert L. Ruffing                                        Page 3

capsules that strip with mild difficulty and have smooth cortical surfaces. Upon sectioning, both are dark red, congested and have cortices of normal thickness. The pelves, ureters and urinary bladder are lined by pale brown, intact mucosa. They are unremarkable and patent. The urinary bladder contains approximately 100 milliliters of yellow urine. Both testes are descended into the scrotal sac. They are soft, ovoid and without abnormality. Upon sectioning, they are pale brown and unremarkable. The prostate is pale brown to pale grey, glistening, rubbery and not enlarged.

ENDOCRINE SYSTEM: The pancreas has normal configuration. It is pale brown, lobular and has normal consistency. The adrenals have normal configuration and unremarkable well-demarcated cortices and medullae.

MUSCULOSKELETAL SYSTEM: Muscle development is normal. No bone or joint deformities are noted.

IMMUNOLOGICAL SYSTEM: Lymphadenopathy is not present.

HEAD AND CENTRAL NERVOUS SYSTEM: The scalp is incised from ear to ear and reflected anteriorly and posteriorly. The scalp shows no evidence of recent or remote injury. The calvarium is removed by converging circular saw cuts. No skull fractures are present. The brain is removed in its entirety and weighs 1570 grams. The dura and the dural sinuses are unremarkable. The leptomeninges are smooth and transparent. The cerebral and cerebellar hemispheres are symmetrical. The surfaces of the cerebrum, cerebellum and brainstem show no softening, atrophy or masses. There is no evidence of herniation of the cingulate gyri, unci or cerebellar tonsils. Examination of the arteries of the circle of Willis and their branches reveal no atherosclerosis, no thrombosis, nor aneurysm and no malformations. The superficial veins are unremarkable. The cranial nerves are normal. After coronal sectioning, the cerebral hemispheres reveal a cortex of normal thickness. The ventricles are of normal size and are symmetric. The centrum ovale, central nuclei and internal capsules are unremarkable. Serial transverse sectioning of the brainstem, cerebellum, pons and medulla reveal no abnormalities.

## MICROSCOPIC EXAMINATION:

Heart, left ventricle: No pathologic diagnosis.
Lung, left: Pulmonary edema. Postmortem tissue gas formation.
Liver: No pathologic diagnosis.
Kidney, right: Early tubular autolysis.

*[signature]*                    09/25/2013

**John A Daniels M.D., Pathologist**
**Forensic Pathologist**

Robert L. Ruffing                                                                                                       Case #   LAB-13-1997

This report has been validated as accurate and complete by *Calvin McGuire* (signature)

                                                                                             Calvin McGuire B.S.

Buprenorphine result obtained from the Wexner Medical Center Clinical Laboratories at the Ohio State University, Columbus, Ohio.

Monoacetylmorphine, morphine, acetylcodeine, and traces of codeine are markers for diacetylmorphine, commonly known as heroin.

Residue from a syringe with cap and top was positive for diacetylmorphine, monoacetylmorphine and acetylcodeine by GCMS.
No drugs were found on an aluminum backed piece of paper by GCMS.
Residue from pill vial #1 (no label) was positive for diazepam by GCMS.
No drugs were found on pill vial #2 (no label) by GCMS.

S - Sub Theraputic         XL - Toxic to Lethal
T - Theraputic               L - Lethal
TH - High Therapeutic   P - Palliative
X - Toxic



# Franklin County Coroner's Office

*Dr. Jan M. Gorniak*
520 King Ave.
Columbus, Ohio 43201-2632
(614) 525-5290 Fax (614) 525-6002
www.franklincountyohiocoroner.com

## Coroner's Report: Finding of Facts and Verdict

In compliance with the Ohio Revised Code, Chapter 313, the Coroner's Report and Findings of Fact and Verdict are supplied.

Case No: LAB-13-1997

| Last name First Middle | Date of Death | Time of Death | Pronounced By |
|---|---|---|---|
| Ruffing, Robert L. | 08-05-2013 | 1131 hrs | Columbus Fire Department Medic #2 |

| Decedent's Address (Number and Street) |
|---|
| 1948 Forest Lake Court |

| City | State | Zip |
|---|---|---|
| Grove City | OH | 43123 |

| Date of Birth | Age | Gender | Race | Height | Weight | Hair Color | Eye Color |
|---|---|---|---|---|---|---|---|
| 02-28-1972 | 41 years | M | White | 73 | 188 | Brown | Brown |

| Facility or Address of Death | Place of Death |
|---|---|
| Rear of 877 Heyl Avenue | Vehicle |

| City | State | Zip |
|---|---|---|
| Columbus | OH | 43206 |

| Next of Kin | Phone | Relationship |
|---|---|---|
| Larry Ruffing | 614-871-0919 | Father |

| Next of Kin Address |
|---|
| 1948 Forest Lake Court |

| City | State | Zip |
|---|---|---|
| Grove City | OH | 43123 |

| Funeral Home | Phone |
|---|---|
| Newcomer Funeral Home | 614-539-6166 |

This is to certify that this is a true
and exact copy of the original document

| Decedent | Case Number | Page 2 |
|---|---|---|
| Ruffing, Robert L. | LAB-13-1997 | |

## CAUSE AND MANNER OF DEATH

| Immediate Cause |
|---|
| Acute intoxication by heroin |

| Other Significant Conditions |
|---|
| |

| Manner | Autopsy | Date Examined | Time Examined |
|---|---|---|---|
| Accident | Yes | 08-06-2013 | 1040 hrs |

| Name, Title and Address of Person Who Completed Cause of Death |
|---|
| John Daniels M.D.    520 King Avenue Columbus, OH 43201 |

| Investigating Agency | Phone |
|---|---|
| Columbus Homicide | (614) 645-4730 |

| Date of Injury | Time of Injury | Place of Injury | Injury at Work? |
|---|---|---|---|
| 08/05/2013 | unknown | Vehicle | Yes |

| How Injury Occured |
|---|
| Recent drug use |

| Injury Address (Street, City, State, Zip) |
|---|
| Rear of 877 Heyl Avenue, Columbus, Ohio 43206 |

Anthony Scott
71608-061
Federal Correctional Institution Elkton
P.O. Box 10
Lisbon, Ohio 44432

⇔ 71608-061 ⇔
Office Of The Clerk
Southern Ohio
85 Marconi BLVD
District Courts
Columbus, OH 43215
United States

