# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

UNITED STATES OF AMERICA,

           Plaintiff,    :    Case No. 2:13-cr-223
                                         Also 2:16-cv-466

                                         District Judge Edmund A. Sargus, Jr.
- vs -                               Magistrate Judge Michael R. Merz

ANTHONY SCOTT,

           Defendant.    :

## REPORT AND RECOMMENDATIONS

This criminal case is before the Court on Defendant Anthony Scott's Motion for Relief from Judgment (ECF No. 86). The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in this District (ECF No. 89). Post-judgment motions in § 2255 cases are referred gto the Magistrate Judge under 28 U.S.C. § 636(b)(3) for a report and recommendations.

**Litigation History**

Anthony Scott was indicted by a grand jury of this District on October 1, 2013, on charges of possession of heroin with intent to distribute it (Counts 1, 2, 3, and 4); and possession of a firearm in furtherance of drug trafficking (Count 5)(Indictment, ECF No. 10). On November 12,

1

2013, Scott entered into a Plea Agreement with the United States in which he acknowledged "the offense of conviction establishes that the death of an individual resulted from the use of the heroin that was distributed, the defendant 's base offense level is 38" and  he "possessed a dangerous weapon (a firearm) at the time of and in furtherance of the commission of Count Four of the Indictment and he will receive a 2  level enhancement over and above his base offense level."  (ECF No. 19, PageID 38).

Thereafter Scott obtained new counsel and entered into a new Plea Agreement (ECF No. 34).  The acknowledgements quoted from the prior Plea Agreement did not change. *Id.* at PageID 65.  On May 29, 2014, having reviewed a presentence investigation report and the parties' sentencing memoranda, Judge Frost sentenced Scott to twenty years imprisonment (ECF Nos. 45 and 46).

Scott appealed and the Sixth Circuit affirmed. *United States v. Scott*, Case No. 14-3521 (6th Cir. Mar. 2, 2015)(unpublished; slip opinion at ECF No. 58), cert. denied Case No. 14-9351 (May 18, 2015(Notice at ECF No. 61).

Upon Judge Frost's retirement, the case was reassigned to Judge Sargus.  Scott filed his Motion to Vacate under 28 U.S.C. § 2255 on May 25, 2016 (ECF No. 64).  Magistrate Judge Elizabeth Preston Deavers recommended the Motion be denied (ECF No. 78) and Chief Judge Sargus adopted that recommendation over Scott's Objections (ECF No. 82). Scott again appealed, but the Sixth Circuit denied him a certificate of appealability on August 16, 2018, (ECF No. 85) and the instant Motion followed on February 1, 2019.

**Defendant's Argument**

Scott brings his Motion under Fed.R.Civ.P. 60(b)(6).  He claims there is a fundamental defect in the prior proceeding, to wit, a failure to properly construe his *pro se* pleading in accord with *Erickson v. Pardus,* 551 U.S. 89 (2007).  He asserts:

2

> Primarily, Petitioner attempted to challenge the Government's failure to prove that Robert Ruffin's[1] death was due to him allegedly providing the herion [sic] that contributed to Mr. Ruffin's death. However, Petitioner's argument was reframed as an error by his filing of a judicial notice and trying to add a new claim under the Confrontation Clause as the Court noted that the Petitioner waived his right to challenge the enhancement of his recommended guideline sentence under the "explicit terms of his negotiated Plea Agreement.

(Motion, ECF No. 86, PageID 322.)

Next he claims his guilty plea was not knowing, intelligent, and voluntary because his attorney did not explain to him the but-for causality requirement of *Burrage v. United States*, 571 U.S. 204 (2014). *Id.* at PageID 322. "Specifically," he says, "Counsel's failure to utilize *Burrage* has resulted in a *Glover* violation as "[a]ny additional amount of jail-time has Sixth Amendment significance." See *Glover v. United States*, 531 U.S. 198, 203 (2001)." *Id.*

> In a case where death results enhancement in 21 U.S.C. § 841(b) is applied, this is an element that must be submitted to a jury and found beyond a reasonable doubt or admitted by the defendant. Here, the Petitioner has never admitted that heroin that he distributed caused Mr. Ruffin's death. Notably, Petitioner denied such during the process of plea colloquy.

*Id.* at PageID 324. Scott then broadens his argument to claim that Ruffing did not actually die of a heroin overdose and attaches the Franklin County Coroner's Report to attempt to prove that. *Id.* at PageID 324-25 and attached PageID 330-37.

Scott claims error in this Court's judgment on his § 2255 Motion because the Court

> fail[ed] to make a merits ruling on the arguments contained in the original § 2255 and clarified within this Rule 60(b) motion as a "defect in the integrity of federal habeas proceedings." See *Gonzalez*

---

[1] The decedent's name is Robert Ruffing.

3

> *v. Crosby*, 545 U.S. 524 (2005). A failure to decide Petitioner's core issue on the merits will result in both an illegal sentence an inherent miscarriage of justice.

*Id.*. at PageID 326.

## Analysis

In *Burrage, supra*, the defendant had been convicted by a jury of unlawfully distributing heroin which caused the death of another person, in violation of 21 U.S.C.S. § 841(b)(1)(C), and was sentenced to twenty years' imprisonment, the mandatory minimum penalty for that violation. Burrage sold heroin to another person who used the heroin and other drugs and died the following day. After expert witnesses testified at trial that it was impossible to determine if the decedent died from the heroin use alone, the district court instructed the jury that it could find defendant guilty of violating 21 U.S.C.S. § 841(b)(1)(C) with the "death results" enhancement if it found that the heroin he distributed was a contributing cause of the decedent's death. The Supreme Court held that where use of a drug distributed by a defendant was not an independently sufficient cause of a victim's death or serious bodily injury, the defendant could not be liable for the death results penalty enhancement under § 841(b)(1)(C) unless such use was a "but-for" cause of the death or serious injury.

Since causation is an element of the "death results" enhancement under § 841(b)(1)(C), the Government would have to plead and then prove to a jury beyond a reasonable doubt that the drugs a defendant sold were a but-for cause of death. *Burrage*, 571 U.S. at 210. *Burrage* was decided January 27, 2014, after Scott entered his plea but before he was sentenced.  If he had been tried on an 841(b)(1)(C) count with a "death results" enhancement and the jury had been instructed that contributing cause was sufficient, then *Burrage* would have been applicable on appeal.

4

But Scott was never charged under 21 U.S.C. § 841(b)(1)(C) with a "death results" enhancement. The Indictment does not include such an enhancement and Scott did not plead guilty to a "death results" enhancement. Therefore *Burrage* has no application to the case and it cannot have been ineffective assistance of trial counsel for Scott's trial attorney not to "use" *Burrage* in defense or to explain to Scott the impact of *Burrage* on this case.

Under § 841(b)(1)(C) with the death results enhancement, the mandatory **minimum** sentence is twenty years; without the death results enhancement, the **maximum** sentence is twenty years.

Both Plea Agreements Scott signed, having obtained new counsel before the second one, provide:

> (2) The parties agree that pursuant to U.S.S.G. § 2D1.l(a)(2) because the defendant will be convicted under 21 U.S.C. § 841 (b)(l)(C) and the offense of conviction establishes that the death of an individual resulted from the use of the heroin that was distributed, the defendant 's base offense level is 38;

This is not an agreement that Scott will plead to a "death results" enhancement. Rather it is an agreement on how the Sentencing Guidelines are properly applied to this case. That is, the parties agreed that one characteristic of the offense to be used in calculating the offense axis under the Guidelines is that death resulted from the offense with the result that Scott's base offense level would be 38. The same paragraph of the Plea Agreements provides that Scott will receive a three-level reduction of that base level for acceptance of responsibility, but a two-level enhancement for possessing a firearm in furtherance of the drug distribution. The applicable sentencing guideline provisions is

> §2D1.1. Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy

5

>    (a)  Base Offense Level (Apply the greatest):
>
>    (1) **43**, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a similar offense; or
>
>    (2) **38**, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance;

By entering into the Plea Agreement, Scott not only avoided a "death results" enhancement under the statute. but also the possibility that the Government would file an Information to prove his prior drug convictions, which would have elevated the base offense level to 43.

At the plea colloquy hearing on February 20, 2014, Scott acknowledged that his attorney, Mr. Sanderson, had fully explained the plea agreement to him in a way his prior counsel had not (Transcript, ECF No. 56, PageID 132-33).  He acknowledged his understanding that the maximum penalty was twenty years' imprisonment. *Id.* at PageID 134.  The Assistant United States Attorney read a statement of facts supporting the conviction:

>    Beginning in July of 2013, the DEA in Columbus identified Anthony D. Scott as a dealer in street-level quantities of heroin here within the Southern District of Ohio.  A confidential informant was introduced to Scott and began making recorded phone calls to Scott setting up narcotics transactions and conducting controlled purchases of heroin from Scott beginning in late July.
>
>    Under the direction of the DEA, the CI made controlled  purchases of multi-gram amounts of heroin from Scott on July 31st, August 15th, and August 22nd.

6

> On August 30, a federal search warrant was conducted on Scott's residence at 2468 Dawn Light Avenue, Columbus, Ohio. Inside, investigators found approximately 130 grams of heroin, 50 grams of cocaine, firearms in both the bedroom and living room of the residence, including a Glock .357 caliber pistol on the floor in the bedroom and underneath a cell phone which Scott positively identified as belonging to him. Scott was subsequently interviewed by investigators and, after waiving his Miranda rights, admitted that he was a drug dealer, including dealing in heroin, and admitted that the drugs found inside the residence belonged to him.
>
> Additional investigation found that, on August 4th, Scott distributed heroin to an individual named Robert Ruffing, who was then found deceased on August 5, 2013. An autopsy was subsequently conducted on Ruffing, and it was confirmed that the cause of his death was a heroin overdose.
>
> After Ruffing's death, additional witnesses confirmed that Ruffing was a heroin customer of Scott's, and one government source of information confirmed that Scott had admitted he had sold heroin to Ruffing on August 4th.
>
> A review of cell phone call records also established that Scott was among the last persons Ruffing called on August On August 15th and August 22nd, investigators had a CI place recorded phone calls to Scott in which Scott admitted that a male he had previously provided heroin to had died after overdosing on the heroin Scott provided.

*Id.* at PageID 150-52.

In response to this statement of facts, defense counsel stated:

> MR. SANDERSON: Your Honor, we don't dispute any of the facts as they apply directly to the case, nor do we dispute any of the facts as presented by the government. The government said that the evidence would show and the witnesses did attribute and that Mr. Scott said X, Y and Z. And we agree with all of that.
>
> Mr. Scott has, throughout these proceedings, disputed whether or not the heroin he provided to Mr. Ruffing caused his death, but we

7

> acknowledge that he did say what he said on the recording, that there are at least two recordings, and that there is a separate witness who would provide additional testimony concerning other statements made by Mr. Scott and that there is additional forensic evidence, specifically cell phone records, that would tie Mr. Scott to the death. So, we accept the facts as they apply to Count 4 of the indictment, and we accept that that is what the evidence is with respect to the death of Mr. Ruffing.

*Id.* at PageID 152-53.  This statement of facts provided a factual basis for conviction and also for assigning the base level of 38 to the offense.

The Presentence Investigation Report calculated a sentencing range under the Sentencing Guidelines that would have been 262-327 months[2] and recommended 240 months (Transcript, ECF No. 57, PageID 164.).  Scott made no objections to the PSR. *Id.* at PageID 161.  Judge Frost imposed a sentence of 240 months, recognizing that Scott had benefited a great deal by his attorney's bargaining to avoid the "death results" enhancement and prior convictions Information.

On appeal, Scott's counsel filed an *Anders* brief and sought to withdraw.  Scott opposed the motion, but the Sixth Circuit wrote:

> asserting that Ruffing's death was not an element of the crime to which he pleaded guilty, but was an issue of fact that should have been submitted and proven to a jury, pursuant to *Alleyne v. United States,* 133 S. Ct. 2151 (2013).  Scott also claims that he had no intent to cause Ruffing's death and the enhancement is unconstitutional. Finally, Scott asserts that the government used the "threat of § 851[3]" in order to induce him into pleading guilty. Scott also requests that new counsel be appointed in the event that current counsel is allowed to withdraw. After independently examining the record, pursuant to *Penson v. Ohio,* 488 U.S. 75, 82-83 (1988), counsel's brief, and Scott's response, we grant the motion to withdraw because no arguable grounds for appeal can be sustained.

---

[2] Before applying the so-called Holder reduction
[3] The statute under which the prior convictions information would have been filed.

*United States v. Scott,* copy at ECF No. 58, PageID 197.  The Sixth Circuit found in turn that there was no arguable basis to find the guilty plea invalid or that the sentence was unreasonable or that Scott could not be held responsible under the Guidelines for Ruffing's death.  On this last issue, the court held:

> With respect to Scott's pro se brief, all of the claims he raises regarding the sentencing enhancement as the result of Ruffing's death are precluded by Scott's plea agreement. Despite Scott's statements at his plea hearing that he did not agree that he was responsible for Ruffing's death, he admitted the accuracy of the government's evidence, including his own statements in telephone conversations soon after Ruffing's death that a man died as the result of heroin that Scott sold to him. Further, in his plea agreement—which the record establishes was entered into knowingly and voluntarily, as explained above—Scott stipulated that his base offense level would be 38 on the basis that Ruffing's death resulted from his distribution of heroin.  Accordingly, he cannot raise an arguable issue on appeal that the enhancement was improperly applied. Moreover, the imposition of the enhancement does not violate *Alleyne*. *See Alleyne*, 133 S. Ct. at 2163 ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."). In any event, Scott agreed to the enhancement in his plea agreement; consequently, the fact did not have to be submitted to a jury. *See Blakely v. Washington*, 542 U.S. 296, 303 (2004).

*Id.* at PageID 200-201.

Scott's 2255 Motion included the following claim:

> **Ground Two:** Scott was informed by counsel that if he pleaded guilty that the Court would not consider the "death results".
>
> **Supporting Facts:**  In this case, Scott was initially charged with distributing drugs, and that those drug [sic] played a part in the death of an individual. Counsel assured Scott that if he pleaded guilty the death results enhancement would not be applied. Was Scott denied

9

>effective assistance of counsel when the Court imposed a sentence to include the death result enhancement?

(Motion, ECF No. 64, PageID 214). In his Memorandum in support of the Motion, Scott argued that death was an "element" of the offense of conviction which neither the Court nor his attorney had explained to him (ECF No. 72, PageID 241, expressly relying on *Burrage*.)

In recommending that the § 2255 Motion be dismissed, Chief Magistrate Judge Deavers quoted the Sixth Circuit opinion at length and held the issues Scott was raising could not be relitigated because they had already been ruled on by the Sixth Circuit:

>Thus, the Sixth Circuit held that Petitioner had waived his claim that his sentence was improperly enhanced based on Ruffing's death, pursuant to the terms of his negotiated *Plea Agreement.* This Court therefore will not now again address that same issue here. "A § 2255 motion may not be used to relitigate an issue that was raised on direct] appeal absent highly exceptional circumstances." *Dupont v. United States*, 76 F.3d 108, 110–111 (6th Cir. 1996) (citing *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995); s*ee Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.").

(Report and Recommendations, ECF No. 78, PageID 266-67.) In a Motion for Judicial Notice, Scott attempted to introduce further argument that it was not his heroin that killed Ruffing (ECF No. 80). Chief Judge Sargus adopted Judge Deavers Report and also rejected the request for judicial notice and the untimely attempt to add a Confrontation Clause claim (Opinion and Order, ECF No. 82, PageID 294). He denied Scott a certificate of appealability. *Id.* at PageID 295-96. The Sixth Circuit also denied Scott a certificate of appealability. *Scott v. United States*, Case No. 18-3447 (6th Cir. Aug. 16, 2018)(unpublished; copy at ECF No. 85).

Fed. R. Civ. P. 60(b), under which Scott seeks relief, provides:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

It is well established that Rule 60(b)(6) is not to be used as a substitute for appeal. *Polites v. United States*, 364 U.S. 426 (1960); *Ackerman v. United States*, 340 U.S. 193 (1950). Relief should be granted under Rule 60(b)(6) only in unusual circumstances where principles of equity mandate relief, *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990), and the district court's discretion under 60(b)(6) is particularly broad. *Johnson v. Dellatifa,* 357 F.3d 539 (6th Cir. 2004); *McDowell v. Dynamics Corp.*, 931 F.2d 380, 383 (6th Cir. 1991); *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989).

> Rule 60(b)(6) is a "catchall" provision that "vests courts with a deep reservoir of equitable power to vacate judgments 'to achieve substantial justice' in the most 'unusual and extreme situations."' *Zagorski v.* Mays, 907 F.3d 901, 904 (6th Cir. 2018) (quoting *Stokes v. Williams,* 475 F.3d 732, 735 (6th Cir. 2007)). The Sixth Circuit has made clear that Rule 60(b)(6) "applies only in exceptional or

> extraordinary circumstances where principles of equity mandate relief." *West v. Carpenter,* 790 F .3d 693, 696-97 (6th Cir. 2015) (citing *McGuire v. Warden, Chillicothe Corr. Inst.,* 738 F.3d 741,750 (6th Cir. 2013)). In other words, Rule 60(b)(6) is to be used rarely-especially in habeas corpus. *See Gonzalez v. Crosby,* 545 U.S. 524, 535 (2005).

*Hand v. Houk,* 2020 U.S. Dist. LEXIS 41511 *3 (S.D. Ohio Mar. 10, 2020)(Watson, J.)

Relief under 60(b)(6) is warranted only in exceptional or extraordinary circumstances not addressed by the other numbered clauses of Rule 60. *Johnson v. Dellatifa,* 357 F.3d 539 (6th Cir. 2004); *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989). Furthermore, this provision and other provisions of Rule 60(b) are mutually exclusive; that is, if the reason offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), then relief cannot be granted under Rule 60(b)(6). *Abdur'Rahman v. Bell (In re Abdur'Rahman)*, 392 F.3d 174, 183 (6th Cir., 2004)(en banc)(vacated on other grounds, 545 U.S. 1151 (2005), *citing Liljeberg v. Health Svcs. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988).

A change in decisional law is usually not, by itself, an extraordinary circumstance. *Landrum v. Anderson*, 813 F.3d 330 (6th Cir. 2016); *Wright v. Warden*, 793 F.3d 670 (6th Cir. 2015); *Henness v. Bagley*, 766 F.3d 550 (6th Cir. 2014); *McGuire v. Warden*, 738 F.3d 741 (6th Cir. 2013), citing *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007); *Agostini v. Felton*, 521 U.S. 203, 239 (1997); *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). The decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009),

*quoting Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefits Fund,* 249 F.3d 519, 529 (6th Cir. 2001).  The district court's discretion in deciding a Rule 60(b)(6) motion is especially broad due to the underlying equitable principles involved.  *West v. Carpenter*, 790 F.3d 693 (6th Cir. 2015), citing *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014).

Subsection (b)(6) is properly invoked only in "unusual and extreme situations where principles of equity mandate relief." *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 597 (6th Cir. 2006) (internal quotation marks omitted).  Motions seeking extraordinary relief under this subsection must be brought within a reasonable time after judgment. Fed. R. Civ. P. 60(c)(1); *Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009).

As best the Magistrate Judge understands Scott's argument, it is that the judgment dismissing his Motion to vacate should be reopened because this Court did not "rule on the merits of his core issue," to wit, whether the heroin he sold to Ruffing caused Ruffing's death.  At various points in this case, Scott has framed that "core issue" in different ways.  He has alleged that the Government had to prove but-for causation because of *Burrage*.  He has alleged his trial attorney provided ineffective assistance of trial counsel because he did not explain *Burrage*.  And he has alleged his guilty plea is voidable because the Court did not explain *Burrage*.

Like many questions that could have been relevant in deciding a criminal case, the question of whether the heroin Scott sold Ruffing was a but-for cause of Ruffing's death could have been relevant in this case.  Scott could have forced the Government, had the grand jury issued an amended indictment with a "death results" enhancement specification, to prove that fact beyond a reasonable doubt because it would then have been an element of the crime under *Alleyne*.  But to do that, Scott would have had to run the risk of a life sentence because with a "death results" enhancement and conviction, his sentence would have been at least twenty years, rather than a

13

maximum of twenty years.  To avoid that risk, he pleaded guilty.  Both this Court and the Sixth Circuit have now held he waived the right to try to win on the causation issue by entering into the Plea Agreement and avoiding the risk of losing.  This Court committed no error in refusing to reach the merits of Scott's "core issue" in deciding his § 2255 Motion because it is no longer an issue in this case.

Scott attempts a new twist on his core issue by presenting the Coroner's Report on Ruffing's death.  That is, instead of asserting the Government did not prove but-for causation or the Court or his lawyer didn't tell him the Government had to prove that, he now says it isn't true, that Ruffing did not die from any heroin overdose.  To the extent this is a new claim, it is far too late – the statute of limitations has long since run on filing any new § 2255 claim.  To the extent this is a new claim, the 60(b)(6) motion amounts to a second or successive such motion which Scott has not received permission form the Sixth Circuit to file.  *Avery v. United States,* 770 Fed. Appx. 741 (6th Cir. May 28, 2019)[4].  To the extent that this new evidence claim is merely the old claim with new support, it is not properly brought under Rule 60(b)(6), but should have been brought under Rule 60(b)(2).  But it is not a good claim under 60(b)(2) because the coroner's report could easily have been discovered at the time this case was before the Court in the first instance.

In any event, the new evidence claim is without merit.  The Coroner's report finds the cause of death is heroin ingestion.  Scott questions the absence of heroin from the list of drugs found in Ruffing's system.   But the coroner's report found the presence of "monoacetylmorphine,

---

[4] To the contrary is *Williams v. United States*, 927 F.3d 427 (6th Cir. Jun. 11, 2019), holding that 28 U.S.C. § 2244(b)(1) applies only to state prisoners proceeding under § 2254.  Avery sought certiorari, which was denied March 23, 2020.  Justice Kavanaugh in his statement accompanying denial of certiorari recognized that *Williams* rejects the position taken in Avery and that the United States now supports the restrictive reading that § 2244(b) does not apply to § 2255 motions.  *Avery v. United States*, 589 U.S. ___, 140 S. Ct. 1080 (2020).  See DOJ Guidance Memo to US Attorneys April 20, 2020.

morphine, acetylcodeine, and traces of codeine which are markers for diacetylmorphine, commonly known as heroin." (ECF No. 86, PageID 335.)

**Conclusion**

Scott's Motion for Relief from Judgment under Fed.R.Civ.P. 60(b)(6) is completely without merit and should be denied. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 26, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.